**Opinion filed September 2, 2010**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00097-CR

_____

### MARK ANTHONY MITCHELL, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 1**
**Tarrant County, Texas**
**Trial Court Cause No. 1121287D**

### M E M O R A N D U M   O P I N I O N

The jury convicted Mark Anthony Mitchell of the state jail felony offense of dog fighting. Appellant pleaded "true" to an enhancement paragraph alleging that he had two prior, sequential felony convictions. The jury found the enhancement allegations to be true, making the offense punishable as a second-degree felony. The jury assessed appellant's punishment at seven years confinement. In two points of error on appeal, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

*Sufficiency of the Evidence Standards of Review*

To determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Laster*, 275 S.W.3d at 519; *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

*The Evidence at Trial*

Manuel Cortez woke up to the sound of his dogs barking in his backyard at about midnight on May 6, 2008. He went outside to see what was disturbing his dogs. Cortez testified that he heard a "loud commotion" coming from across the alley. The record shows that the noise was coming from the backyard of the residence at 1608 Daniel Street. Cortez described the commotion as "dogs fighting [and] people yelling, laughing, [and] carrying on." Cortez said that "[g]uys [were] yelling [things] like, kill him, get him, [and] don't let him go" and that the dogs were "growling and snarling."

Cortez looked through his fence into the backyard across the alley. He said that there were about eighteen to twenty men and five dogs in the backyard. He said that car lights were being used to light the area. Cortez saw appellant holding onto a brown pit bull dog and another man holding onto a black pit bull dog. Cortez said that the brown dog was fighting with the black dog. The record shows that appellant owned the brown dog. At one point, appellant pulled his dog away from the fight but then let it fight again. Cortez said that appellant told his dog to kill the other dog. Cortez testified that, at one point, appellant said, "I bet you $100 my dog kill[s] your dog."

Cortez's wife called the police. Cortez said that many of the men left the scene and that three dogs were taken away from the scene before the police officers arrived. Fort Worth Police Officers J.C. Williams and C.S. Sesbedez responded to the call. When they arrived at the scene, they saw a parked SUV that was facing toward the backyard. Officer Williams testified that the

2

SUV's headlights were being used to light the backyard. The officers heard yelling coming from the backyard. Officer Williams said that people were saying "get 'em [and] kill 'em" and that dogs were growling at each other. The officers walked to the backyard and saw seven people standing in a semi-circle around a brown pit bull dog and a black pit bull dog. The people were facing away from the officers and did not notice that the officers had arrived. The dogs were being held with chains. Officer Williams testified that appellant was holding the chain on the brown dog and that the brown dog was fighting with the black dog. Officer Williams said that appellant was allowing the brown dog to attack the black dog. At that time, the brown dog was biting the black dog on the neck. The officers told appellant and the person holding the chain on the black dog to break up the fight. Officer Williams said that appellant pulled the brown dog away from the black dog by yanking its chain. When appellant yanked the chain, the brown dog let go of the black dog's neck but then started biting the black dog on its legs. With a few more yanks of the chain, appellant was able to separate the brown dog from the black dog. After the dogs were separated, the officers observed several lacerations on the black dog's neck and legs. Both of the dogs' faces were covered in blood. Appellant told the officers that he owned the brown dog.

Fort Worth Animal Control Officer Barry Alexander arrived at the scene at about 1:30 a.m. He testified that the brown dog and the black dog had fresh, bleeding bite wounds on their bodies. He said that the brown dog had multiple wounds to the face and neck and that the black dog had a few less wounds. Officer Alexander also said that the dogs were in need of medical treatment.

Cris Berry, an animal cruelty investigator for Fort Worth, examined the dogs. Berry testified that the dogs had multiple bite wounds and that the pattern of wounds on the dogs was consistent with and common to dog fighting. Berry cleaned the dogs and gave medication to them.

Appellant called his son, Mark Anthony Mitchell Moore, as a witness. Moore testified that he learned in a phone call that appellant's dog was fighting another dog. Moore said that the dogs had gotten loose and were fighting. He said that appellant was not present when the dogs started fighting. Moore said that appellant lived on Spiller Street but that appellant kept his dog at the address where the dogs were fighting. Moore testified that he picked up appellant from his house on Spiller Street and took him to the scene of the dog fight so that he could break up the fight. Moore said that, when they arrived at the scene, the dogs were fighting. He said that

3

appellant pulled his dog back and tried to get him by the collar. Moore said that it was a struggle to get the dogs loose from each other. Moore testified that there was no planned, organized dog fight.

Appellant also called Janice Philips as a witness. She testified that she was at home with appellant on the night of the incident. She said that Moore came to their house and that appellant left with Moore.

*Analysis*

A person commits the offense of dog fighting if the person "intentionally or knowingly causes a dog to fight with another dog." TEX. PENAL CODE ANN. § 42.10(a)(1) (Vernon Supp. 2009). "Dog fighting" is defined as "any situation in which one dog attacks or fights with another dog." *Id.* § 42.10(b)(1). The evidence was undisputed that appellant's brown dog was fighting with the black dog. Cortez and Officer Williams both saw appellant holding his dog's chain while the dogs were fighting. The SUV's headlights were being used to light the area, and a number of people were watching the dogs fight. Officer Williams testified that appellant allowed his dog to attack the other dog. Cortez said that appellant told his dog to kill the other dog and that appellant said to the handler of the other dog, "I bet you $100 my dog kill[s] your dog." Both dogs had fresh wounds and were bleeding after the fight. Moore testified that appellant was merely trying to separate his dog from the other dog. However, as the sole judge of the credibility of the witnesses, the jury was free to disbelieve Moore's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The evidence was legally and factually sufficient to establish that appellant intentionally or knowingly caused a dog to fight with another dog. We overrule appellant's points of error.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL
JUSTICE

September 2, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4